Gabrielli, J.
(dissenting). Neither law nor conscience will permit me to agree that petitioner has made out a plausible claim of impermissible discriminatory enforcement of the law, as claimed by four Judges of this court. I am thoroughly convinced that the determinations made by the Appellate Division and the Supreme Court at Special Term were entirely correct.
This proceeding involves a desperate attempt by the owner of a large unsafe building in midtown Manhattan to avoid, or at least delay, the expense of certain modifications necessary to make the building safe not only for the public but also for the several hundred people who are required to work therein. It is estimated that some 800 people are involved. Ignored by the majority of this court is the fact that the building is concededly in violation of an admittedly valid safety provision, and yet the owner has sought to oppose any modification on the basis of several meritless legal arguments, one of which the majority of this court has, in my opinion, incorrectly and unfortunately accepted. Petitioner suggests that its building has been improperly selected and required to obey the safety provision simply because it contains certain facilities catering to the erotic tastes of some citizens. The majority of this court *699 today concludes that petitioner has made out a sufficient claim to warrant a hearing. I disagree.
Careful examination of petitioner’s complaint and its brief in this court as well as the record, reveals certain facts interesting in the extreme. Petitioner’s original selective enforcement claim was based on an unsupported allegation that respondents were taking no action against other buildings with similar defects even after the safety violations were brought to the attention of the appropriate officials. During the pendency of this proceeding, however, petitioner apparently learned that respondents had in fact taken action to enforce the law against other buildings. As a result, petitioner has now changed the focus of its claim. Rather than arguing that respondents are discriminatorily enforcing the law only against buildings containing adult movie houses and pornographic bookshops, petitioner now argues that the particular corrective action demanded by respondents in this instance is more costly than the type of corrective measures ordered in other buildings with similar defects.
Preliminarily, I note that the particular corrective action proper in a particular building will of necessity vary with the size, occupancy level, age, and condition of the building. The evaluation of such factors is best left to the expertise of the agencies charged with the enforcement of safety regulations and ordinances, as is the final determination of just what improvement is needed in a particular building. Such decisions should not be made by courts which are ill-equipped for them, not normally being composed of engineers.
More significant, however, is the unquestionable fact that in this instance petitioner made no attempt whatsoever to convince the appropriate public officials that the remedy proposed by respondents, namely, installation of a full sprinklering system, was in fact unnecessary, and that some other method would serve equally well. During the course of a long and exhaustive hearing before the Board of Standards and Appeals, before whom petitioner was afforded an opportunity to present any and all relevant information on the safety issue, petitioner unwisely took an "all or nothing” position, arguing first, and almost facetiously, that the city could not enforce its safety regulations against the building now since it had not done so before, and second that even though the building was in violation of the applicable provisions of the code, it was nonetheless safe. The prior argument has, of course, been *700 rejected by every Judge and court faced with it; the latter is singularly unpersuasive, especially in light of the fact that one of petitioner’s own experts, when asked directly whether the building, as it presently exists is safe, at first sought to evade the issue by characterizing the query as "a loaded question” and then responding that he would not build such a building today. He nevertheless stated that it was safe, mainly because there had as yet been no fires in the building. No one has, or ought to have, a so-called vested right in what is concededly a "fire trap” — just as no one has a vested right in a nuisance.
In any event, having failed to propose to the board alternative, less costly methods of remedying the admitted violation covering the entire building, petitioner may not now be heard to complain that the particular corrective measure finally decided upon was excessive. Possibly some less costly method would in fact be adequate. That determination, however, is one for the appropriate agencies and may not be made for the first time in the courts within the context of and as the proof of a claim of discriminatory enforcement.
The majority of this court suggests that a different result is warranted on the theory that the question whether full sprinklerization was necessary was not properly before the board. Apparently this is based on the belief that the only function of the board at that hearing was to determine whether some modification of the certificate of occupancy was necessary, without determining what modification. Then, presumably, it would be for the commissioner to make such a determination subsequent to the board granting him permission to modify the certificate in, apparently, some manner completely unknown to the board. Assuming arguendo that this rather convoluted procedure does express the proper interrelationship of the board and the commissioner, then it would appear certain that after the commissioner issued the order requiring full sprinklerization, it was necessary for petitioner, if it wished to challenge that order, to follow the appropriate route of administrative review by taking an appeal to the board. Having failed to do so, and thus having precluded consideration of its claims by the board, the group best equipped to deal with them, petitioner should be precluded from now seeking, as the majority candidly admits, to assert those claims for the first time in this proceeding. In either case the result is the same. Either petitioner had an opportunity to present its claims to the board at the hearing, *701 and failed to do so, or petitioner failed to appeal to the board from the order of the commissioner requiring full sprinklerization; in either case, petitioner is precluded from now asserting those claims in court.
When all is said and done, the simple fact remains that petitioner owns and is operating an unsafe office building. The danger is a real one; at any time the building could catch fire and in that case there would simply be insufficient means of escape for persons trapped in the building. In such a case I cannot countenance this court’s decision to reward petitioner’s delaying tactics and to overlook its failure to have made its objections in the proper forum at the proper time. Accordingly, I vote to affirm the order appealed from.
Judges Jasen, Jones and Wachtler concur with Judge Fuchsberg; Judge Gabrielu dissents and votes to affirm in a separate opinion in which Chief Judge Cooke concurs.
Order reversed, with costs, and the matter remitted to Supreme Court, New York County, for a hearing in accordance with the opinion herein.